**DAVID J. HOLDSWORTH (4052)**
9125 South Monroe Plaza Way, Suite C
Sandy, UT  84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com
*Attorney for Plaintiff*

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| TONY C. SEABORN, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| STRONG EUROPEAN IMPORTS, | : | |
| LLC, | : Civil No. 2:25-cv-00545 | |
| | : | |
| Defendant. | : Hon. | |

COMES NOW the Plaintiff, Tony C. Seaborn, complains of Defendant

Strong European Imports, LLC, demands trial by jury, and as and for causes of action,

alleges as follows:

### PARTIES

1. Plaintiff Tony C. Seaborn is a citizen of the United States and, at

all times relevant hereto, was a resident of the State of Utah.

2. The entity which Plaintiff names as Defendant herein is Strong

European Imports, LLC, is an entity which does business in the State of Utah and

which is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, and which, at all times relevant hereto, employed Plaintiff.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the instant case pursuant to federal question — namely, the interpretation and application of Title VII, which provides that it is unlawful to discriminate against an employee in his employment on the basis of his race, color, and national origin.

4.      Venue in this Court is proper in that the causes of action alleged herein arose in the Federal District of Utah, and/or that where Plaintiff worked is located in the State of Utah, and/or that the employment records relevant to Plaintiff's claim may be found in the State of Utah, and/or that the Defendant is deemed to "reside" in the State of Utah.

## EXHAUSTION OF ADMINISTRATIVE PROCESSES AND REMEDIES

5.      On or about July 27, 2024, Plaintiff filed a Charge of Discrimination with the Utah Labor Commission, dual-filed with the U.S. Equal Employment Opportunity Commission ("EEOC"), in which he alleged that Defendant had unlawfully discriminated against him based on his race.

6.      Plaintiff filed his Charge of Discrimination within 180/300 days from the last date of alleged harm of May 15, 2024.

7.      On or about January 2, 2025, Plaintiff filed a Request to Withdraw His Charge of Discrimination from the Utah Labor Commission's administrative process.

8.      On or about January 2, 2025, the Utah Labor Commission granted Plaintiff's request.

9.      On April 28, 2025, the U.S. Equal Employment Opportunity Commission ("EEOC") issued Mr. Seaborn a Notice of Right to Sue letter.  Mr. Seaborn received this letter (which had been mailed to him) a few days later.

10.     Mr. Seaborn is filing this civil action within 90 days of receipt of such Right to Sue letter.

11.     The Court may consider in its determination all discrete actions that occurred between 180/300 days prior to the date of Plaintiff's filing of his Charge of Discrimination of July 27, 2024, and all non-discrete actions that occurred prior to that 180/300 look-back period, which continued on past that date.  The Court may treat all other discrete actions occurring prior to that date as being untimely for purposes of relief.  However, the Court may give evidence of such events weight for evidentiary purposes.  Thus, all jurisdictional requirements have been met as required by Title VII of the Civil Rights Act of 1964, as amended.

### STATEMENT OF FACTS

12.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 12 above as if alleged in full herein.

13.    Plaintiff is of the African and Native American races, black in color and traces his national origin back to Africa and/or Native America.

14.    During his application and interview process and employment with Defendant, Plaintiff interfaced with several managers and supervisors, including Spencer Webb ("Webb"), General Manager of Defendant's Audi dealership in Salt Lake City, Utah.

15.    Plaintiff alleges that, on April 27, 2024, he interviewed by phone for the position he was eventually hired to fill.  In that interview, Defendant's agent told him that no one else was being looked at to be hired for the position for which he was interviewing for, but on May 3, 2024, Plaintiff discovered that a Caucasian individual had also been hired for the same position for which he had applied and been interviewed.

16.    Plaintiff alleges that, from the very beginning of his hiring process and continuing into his actual employment, the circumstances surrounding his employment support an inference that Defendant was treating him differently and adversely because of his race, color and national origin.

17.    Plaintiff alleges that, after the initial phone interview, Defendant invited him to come to the dealership for an in-person interview.  Plaintiff alleges that, as soon as the manager with whom he was to interview saw him and realized he was of the African race, black in color and from a non-European national origin, Plaintiff noticed a distinct change in the manager's demeanor towards him.

18.    On May 13, 2024, Defendant hired Plaintiff to work as a client advisor (car salesman).

19.    Thus,. Defendant did eventually hire him and, on or about May 13, 2024, he began working at the dealership.

20.    Plaintiff alleges that, once his employer discovered that he is a person of an African American race and black in color, it no longer wanted to employ him.

21.    Plaintiff alleges Defendant was not interested in having Plaintiff be around very long and tried to sabotage his performance.

22.    Plaintiff alleges that, on May 15, 2024, his second day on the job, Defendant terminated him from his employment.  Plaintiff alleges Defendant told him that it was "going in a different direction".  Plaintiff alleges such reason was false. Plaintiff alleges the Caucasian employee who had been hired just before Defendant had hired Plaintiff was not terminated.

23. Plaintiff alleges that he now understands that he was terminated based on hearsay from an employee, Troy Young ("Young"), who had only worked for the company for a few days before Plaintiff started his employment with Defendant.

24. On information and belief, Plaintiff alleges that, on May 13, 2024, Young approached Webb and told Webb that he had worked with Plaintiff before at a Mercedes Benz store in Layton, and, then, in Draper, and that Plaintiff had threatened him.

25. Plaintiff alleges that Defendant's actions, based on Young's fabricated story of him being a physical threat to Young in the workplace, in terminating Plaintiff's employment. Young may have told Webb he would not work for Defendant if Plaintiff remained employed. Because of Young's performance and experience in his two weeks of employment, Webb did not want to lose Young as an employee and viewed Plaintiff as more expendable. On information and belief, Plaintiff alleges that Young then met with Human Resources and convinced Human Resources to terminate Plaintiff's employment, all without any contact with Plaintiff in any way.

26. Plaintiff alleges Webb believed Young's side of the story regarding an alleged assault without ever contacting Plaintiff to get his side of the story because Young was Caucasian, and white, and Mr. Seaborn was African American and

6

black.  Had Webb done so, Plaintiff would have been able to explain that, in the interacting with Young, Young had been the instigator of a confrontation at a prior store and Plaintiff had informed Young that, if Young continued to harass Plaintiff, Plaintiff would not put up with such harassment.

27.    Plaintiff alleges Webb was looking for a reason to get rid of Plaintiff because of his race, color and national origin, and used Young's false report of Plaintiff being an aggressor towards Young to justify terminating Plaintiff's employment without performing any level of investigation.

28.    Plaintiff alleges that he was given no notice prior to his employment being terminated and Defendant did not tell him why his employment was being terminated or who had made the decision to terminate Plaintiff's employment, Plaintiff alleges that Defendant told him only that the company decided to "go in a different direction".  Plaintiff alleges that such reason was false; in that the company was desiring to go in the same direction, just without him.

29.    Thus, Plaintiff alleges that Defendant discriminated against him based on his race, color and national origin, and that Defendant's actions are in violation of Title VII of the Civil Rights Act of 1964, as amended.

30.    Plaintiff alleges Defendant's actions have caused him to lose the opportunity to work and reap the financial benefits of such work, which could have paid him in the neighborhood of $200k per year (in a sales position).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DEFENDANT DISCRIMINATED AGAINST PLAINTIFF
### ON THE BASIS OF HIS RACE, COLOR, AND NATIONAL ORIGIN

31.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 30 above as if alleged in full herein.

32.    To state a prima facie case of discrimination based on race, color and/or national origin, Plaintiff alleges facts which establish, or tend to establish, that: (1) he is a member of a protected class or classes; (2) he was qualified for the position he held; (3) Defendant took adverse employment action against him; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination.  *See, generally, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

33.    To establish the first and second elements of a prima facie case of discrimination based on race, color, and/or national origin, Plaintiff alleges that he is a member of a protected class or classes.  Plaintiff is of the African and Native American races, black in color and traces his national origin back to Africa and Native America.

34.    Plaintiff alleges he was qualified for the position he held in that he had had many years of experience in selling cars, especially luxury and imported higher end cars, had interviewed with Respondent on April 27, 2024, and was subsequently hired on May 13, 2024, had certified with Audi, had switched his license to Defendant's dealership, and that he was working successfully in the position.

35.    Plaintiff's allegations satisfy the first and second elements of a prima facie case of discrimination based on race, color and/or national origin.

36.    To establish the third element of a prima facie case of discrimination based on race, color, and/or national origin, Plaintiff alleges that Defendant subjected him to an adverse action.  An adverse employment action includes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment was significantly different responsibilities, or a decision causing a significant change in benefits".  *See Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007).

37.    Plaintiff alleges that Defendant subjected him to several adverse actions, including on May 15, 2024, when Defendant terminated his employment.

38.    Termination is an adverse action.  *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007).

9

39.     As such, Plaintiff's allegations satisfy the third element of a prima facie case of discrimination based on race, color, and/or national origin.

40.     To establish the fourth element of a prima facie case of discrimination based on race, color, and/or national origin, Plaintiff alleges facts and circumstances which support the drawing of an inference that discrimination played some role in Defendant's decision to terminate Plaintiff's employment.  Such facts and circumstances include: (1) Plaintiff alleges that Defendant told him that no other candidate was being considered for the position, but Defendant then hired a Caucasian white man for the same position for which Plaintiff was competing (and then hired Plaintiff; (2) Plaintiff alleges that, during his first day on the job, as he was nearing the point of making a sale, a manager intentionally inserted himself in the sales process and "blew up" the deal Plaintiff was trying to land on his first day; (3) disparate treatment, which, but for the employee's protected trait, would be different, *see International Union v. Johnson Controls, Inc.,* 499 U.S. 187, 200 (1991), in that Defendant terminated Plaintiff's employment, but did not terminate his Caucasian white coworker's employment for having had a confrontation together at another dealership; and (4) evidence that the protected trait actually motivated the employer's decision in that, as soon as Defendant realized Plaintiff's race, color and national

origin, its attitude towards and treatment of Plaintiff changed dramatically. *See Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544 (1971).

41.     Plaintiff denies the accusations made by Young.  He alleges Webb's reason is pretextual.  He makes such allegations on several grounds: (1) Webb apparently felt Young's allegations were true, but did not ask Plaintiff for his side of the story; (2) Plaintiff alleges Webb accepted Young's story because Young was Caucasian and white and Plaintiff was African American and black; and (3) Webb never even asked Plaintiff to tell him what his side of the story was or considered any options, short of termination for Plaintiff.

42.     Plaintiff alleges other coworkers and employees not of his race, color and/or national origin have engaged in or demonstrated behavior contrary to or in violation of Defendant's policies, but Defendant did not discipline, or terminate their employment.  Accordingly, Plaintiff alleges that Defendant terminated his employment because of his race, color and national origin.

43.     Plaintiff also alleges that, because (1) he was performing satisfactorily; and (2) the accusations of him engaging in improper conduct at a previous dealership were false, his race, color and national origin actually motivated Defendant's decision to terminate his employment.

44.     Plaintiff's allegations satisfy the fourth element in a prima facie case of discrimination based on race, color, and/or national origin.

## IV.  DAMAGES

45.     Mr. Seaborn alleges Defendant's actions and inactions have caused him various losses, injuries and other damages, including lost wages, lost benefits, financial stress, and emotional distress.

## V.  RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically an Order and Judgment:

1.     Declaring that Defendant discriminated against Mr. Seaborn on the basis of his race, color, and national origin, and retaliated against him, in violation of the Title VII of the Civil Rights Act, and the UADA;

2.     Awarding Mr. Seaborn "make whole" relief, including awarding Mr. Seaborn the lost wage and lost benefit differential from the time Defendant terminated Mr. Seaborn's employment until Mr. Seaborn secures comparable employment, or for a period of five years, whichever occurs first;

3.     Awarding Mr. Seaborn damages for emotional distress;

4.      Awarding Mr. Seaborn his reasonable attorney's fees and costs;

5.      Awarding Mr. Seaborn such other relief as may be just and

equitable.

DATED this 9th day of July, 2025.


                              /s/ David J. Holdsworth
                              David J.  Holdsworth
                              *Attorney for Plaintiff*

**VERIFICATION**

Tony C. Seaborn, being first duly sworn, upon his oath, deposes and says that he is the Plaintiff in the above-entitled action, that he helped prepare and has read the foregoing COMPLAINT and understands the contents thereof, and the statements made therein are true to the best of his knowledge and recollection.

_/s/ Tony C. Seaborn_
Tony C. Seaborn

SUBSCRIBED AND SWORN to before me, a Notary Public, this _____ day of _____, 20___.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:         RESIDING AT: _____

_____